[No. 9850.   Department Two.   October 31, 1911.]

J. C. McDONALD, *Appellant*, v. LEWIS T. DIETDERICH *et al.*, *Respondents.*[1]

BROKERS—CONTRACT FOR EMPLOYMENT—PERFORMANCE OR BREACH—EVIDENCE—SUFFICIENCY. A broker failed to earn his commissions for placing a loan of $100,000 on timber lands, represented to him as containing forty million feet of timber, and did not rely on such representations, where it appears that the only party procured by him to make the loan was one D., who wanted to buy the timber and was willing to advance the money in case he bought the timber, that nothing further than preliminary negotiations followed, which ended on D's cruise showing only about twenty million feet, and it further appearing that the representations as to the amount of the timber were but expressions of opinion made to the broker, who spent several days making his own investigation of the conditions; such representations not being in any event any part of the contract to pay the commissions.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered February 25, 1911, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, in an action on contract.   Affirmed.

*Isham N. Smith, T. W. Hammond,* and *H. F. Norris,* for appellant.

*James M. Ashton,* and *Huffer, Hayden & Hamilton,* for respondents.

MORRIS, J.—Appellant sought in this action to recover upon an alleged contract, whereby respondents agreed to pay him a commission of $25,000 for procuring a loan of $100,-000 upon the security of certain timber and coal lands near Ravensdale.   It is further alleged that, relying upon his contract, appellant procured a party who was able, ready, and willing to make such loan in accordance with the terms of the contract, providing certain representations made by respondents as to the amount of timber upon the land were

[1]Reported in 118 Pac. 341.

found to be true; that the loan was refused only because such representations were found to be untrue. Answer denying these allegations was filed, and upon the trial, judgment was entered for respondents, and this appeal follows.

The contract is established, and the only question to be determined is, Did appellant comply with it? The representation claimed to be false is appellant's contention that respondents represented there was forty million feet of timber on the land; whereas, in fact, there was not to exceed twenty million. The lower court held the question of misrepresentation as to the amount of timber on the land to be immaterial, for the reason that appellant upon the trial did not rely upon the original contract pleaded, but upon a substituted agreement, which he finds was never consummated. It would, of course, be immaterial, if properly within the issue, whether the final agreement was the original agreement or not. If any substituted agreement represented the final contract of the parties, and acting under it appellant procured one who was willing to advance the money upon terms agreed upon, he would be entitled to his commission, even though the substituted agreement differed from the original agreement, the essential thing in appellant's contract being to procure a person who was willing to make the loan upon terms satisfactory to himself and respondents. This, however, the court below finds he did not do. He neither procured a party who was willing to make a straight loan upon the terms originally suggested, nor did he procure one who was willing to make a loan upon any other terms.

The man contended as willing to make the loan was Mr. Danaher of Tacoma, who is evidently engaged in some phase of the lumber business. A proposition involving forty million feet of timber, within such a short distance of Tacoma, evidently appealed to him. But it is evident from the record that his only interest in the matter was obtaining the entire output of timber. The making of a loan of $100,000 upon

a six per cent basis did not interest him at all. What he wanted was to buy the timber. His first inquiry is as to the price for which respondent would sell the logs. After some negotiations, this price was fixed at $8.50 per thousand, which, on the basis of forty million feet, would mean a consideration of $340,000. This, however, involved a sale of the logs, not a loan, and appealed to Danaher only upon his ability to make satisfactory arrangements with respondents whereby he could obtain all the timber on the land. This is evidenced by a wire sent respondents by appellant after his first visit to Danaher: "Wire immediately price you will contract the entire output of timber of the Cedar River Coal & Logging Company. Party leaving tomorrow. Must know today." Had Danaher obtained the timber, he was willing to advance $100,000 upon the deal; but upon what terms, or within what time or other necessary detail, was never agreed upon between Danaher and respondents, although there was some talk of six per cent and five years. Obtaining a description of the land from respondents, he sent his cruiser out to cruise it, and receiving a report that the land only cruised between eighteen and twenty million, refused to proceed any farther in the matter. In this connection the court finds that respondents told appellant that they could not pay him $25,000 if they should eventually consummate a sale of the timber to Danaher under the contemplated deal.

It is apparent, as found by the court below, that these negotiations with Danaher never went any further than the preliminary stages, and that no contract was ever entered into between them. Danaher's position is best given in his own language: They were "to let me have these logs off this land for so much money, delivered on the Sound down here, and I was to let them have $100,000. This $100,000 was to pay off something that they had on the land and for improvements, or putting in the railroad and logging outfit and opening up the proposition." He adds respondents were to

pay six per cent on the $100,000, and that he did not complete the arrangements because the land did not carry the amount of timber represented. On cross-examination he says he was in the market to buy logs, and was willing to advance $100,000 on condition he could get forty million feet of logs; but that he was not willing to loan any money on the timber, on a five-year, six per cent basis, and that the whole thing hinged on his ability to get the timber at a price that appealed to him. He says, again, there was no agreement as to when the $100,000 was to be paid back, nor any express agreement as to the place of delivery of the logs, whether on the cars or in the water, although delivery in the water was talked of, but "nothing whatever agreed to," and that "there was considerably more to be agreed upon before the deal was closed up," "before they got the $100,000."

It seems to us clear, from reading Danaher's testimony, that the proposition never went any farther than the negotiation stage, and that at no time did he consider himself bound, although he does say the only reason why he closed his negotiation for the timber was because of the report of his cruiser as to the amount of timber on the land. Upon this feature, however, he at no time relied upon any statement made by respondents, but sent his own cruiser to make an estimate. Both respondents deny any agreement with Danaher, or that there was any more than an informal discussion of what might be considered in case Danaher took up the proposition. Upon this feature of the case, we agree with the trial court that there never was any agreement between Danaher and respondents.

Respondents suggest there could be no recovery in any event, because appellant relies in the complaint upon his original agreement to procure a straight loan, and that neither by original plea nor amendment does he suggest any right of recovery upon any substituted or modified contract. We do not, however, discuss this contention, it not being material in view of our finding that there was neither substituted

nor modified contract between Danaher and respondents. Appellant, having obtained neither one who was willing to make a loan upon the terms originally submitted to him by respondents, nor one who contracted with respondents to furnish the required amount upon any modification of those terms, has failed to establish a right of recovery upon either the original or any substituted agreement.

As to the alleged misrepresentations as to the amount of timber on the land, the court below finds none were made upon which appellant relied; that while respondents gave appellant estimates of the amount of timber on the land, they were never intended by the parties to be accepted as other than the expression of an opinion as to the quantity of timber; and that appellant, for the purpose of informing himself fully as to the amount of timber, veins of coal, and other matters, spent several days in viewing the land and in obtaining information to enable him to make a detailed showing of the situation to those from whom he might solicit the loan. These findings are justified from appellant's own showing. He himself says, in a prospectus prepared by him and which he mailed to different financial houses in an effort to induce them to make a loan: "I have spent over a week in thoroughly investigating this property and consider the timber alone ample security, while the coal represents many times the amount of the loan." This statement is hardly susceptible of any other construction than that appellant's statements as to the character and value of the property were based upon conclusions derived from a personal investigation of the contemplated security, and that, as admitted in his testimony, the purpose of the statement was to lead the prospective lender to believe he had personal knowledge of the character of the land and its value from a loan standpoint. Neither were the representations, if they be treated as such, a part of the contract between appellant and respondents, so that neither any express nor implied warranty can be incorporated into the contract. Not being part of the contract,

either by its express or implied terms, the failure of the land to contain the amount would not constitute any breach of the contract, which is the basis of appellant's cause of action. Even though we should consider the statements of respondents as representations within the meaning of that term, as it is used in actions where fraud is made the basis of the recovery, it must appear, both in allegation and proof, that they induced the making of the contract and, in full reliance upon their truth, appellant entered into the contract and performed services which availed him naught.·

We do not think any good purpose would be served by a further discussion of the case. The questions involved are purely ones of fact. The court below has found against appellant upon all the issues, and these findings, being amply sustained by the evidence, will not be disturbed; not alone because of the rule that findings sustained·by evidence and made upon contested questions of fact will not be disturbed, but because we agree with the trial court that ·they are the only findings sustained by the evidence.

The judgment is affirmed.

DUNBAR, C. J., CROW, CHADWICK, and PARKER, JJ., concur.